GAIL SHIFMAN (CABN 147334)
Law Office of Gail Shifman
2431 Fillmore Street
San Francisco, CA 94115
Telephone:      (415) 551-1500
Email:           gail@shifmangroup.com

Attorney for Defendant
LORENZO LEE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 19-0226 RS |
| | ) | |
| Plaintiff, | ) | **DEFENDANT LORENZO LEE'S** |
| | ) | **SENTENCING MEMORANDUM** |
| v. | ) | |
| | ) | |
| LORENZO LEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**INTRODUCTION**

Coming before the Court for sentencing on April 15, 2024 is Defendant Lorenzo Lee, 70 years old, following his plea of guilty to one count of Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine, Cocaine Base, Heroin and Methamphetamine. The parties agree on the calculation of the sentencing guidelines as contained in the Presentence Report (PSR) at paragraphs 36 through 46, with a Criminal History Category I. Mr. Lee also agrees with the recommendation of the probation officer for a substantial downward variance under 18 U.S.C.

§3553(a)**1** but urges the Court, for the reasons set forth in the PSR and as set out below, to impose a sentence of time served with a 3-year term of supervised release with the following additional special conditions, (1) 6 months of Community Confinement in a halfway house followed by 6 months of Home Detention, as substitutions for imprisonment, permitting Mr. Lee to maintain his hard earned full time employment with Amazon where he is excelling, allowing him to continue to help support his family and others, where he will also be able to continue his commitment to his post-offense rehabilitation that he has demonstrated over the past five (5) years following the offense conduct, and where, as a senior citizen with chronic health conditions, he can manage these illnesses more successfully by being able to more easily seek quality medical care with his long-term medical providers.  This sentence considers the factors set forth in §3553(a) and is a sentence sufficient but not greater than necessary to achieve the goals of §3553(a) given Mr. Lee's unique characteristics, his age, his full compliance for five years with all of the conditions of pretrial release, his demonstrated post-offense rehabilitation, zero criminal history points, his charitable acts to members of the community, and where the guidelines overstate the offense.

////

---

[1]  The government makes no sentencing recommendation.  The parties and the PSR agree that there is no evidence to show that Mr. Lee sold methamphetamine, fentanyl, or heroin.  The investigation showed that Mr. Lee was focused on selling cocaine. PSR ¶ 17. These other drugs significantly impact the calculation of the offense conduct guideline increasing it substantially.

Calculating the sentencing guidelines for the 1251 grams of cocaine (powder + base), that serves as the weight of cocaine per the plea agreement, is as follows:

| | |
|---|---|
| Base Offense Level, U.S.S.G. § 2D1.1 | 24 |
| Specific Offense Characteristic 2D1.1(b)(18) | -2 |
| Acceptance of Responsibility 3E1.1 | -3 |
| Zero Point Offender 4C1.1 | <u>-2</u> |
| Total Offense Level | 17, CH I, with an applicable guideline range of 24-30 months. |

## LORENZO LEE'S BACKGROUND

Mr. Lee is a simple, humble man who makes time every day to give to and provide for others. He is not flashy or arrogant. He is not greedy. He is a personable, kind, and good man albeit not well educated. He is a considerate soul, generous to a fault, who seeks to improve the lives of his family and those around him in his community. These things cannot be said about the vast majority of defendants who come before the Court.  He is, in fact, the exact opposite of the type of person that someone expects when one thinks of the offense conduct to which he pled.

He comes before the Court for sentencing deeply remorseful for his actions which happened because of his well-intentioned but completely misguided desire to financially support and take care of his family[2] which resulted in his involvement in this case.  In his words, "If I could take back what I did, I would."

And although it may seem incongruent to the offense conduct, Lorenzo Lee's selflessness, love, and care for others serves as a role-model and example not only for his children, but also for other people in the community that he has taken into his home to provide care, and to raise, just like his own children including Desiree and Danielle Lewis, now in their twenties, who have provided the Court with letters supporting Mr. Lee, Exhibit A, pages 1 and 2, Support Letters. Lorenzo Lee speaks with his them, his children, his ex-wife, and friends every day, sometimes more than once per day.  He sees members of his family and the Lewis sisters' multiple times per week.  He remains in close contact and enjoys a significant friendship with his ex-wife.  Mr. Lee is a man who reaches out to others, takes time to speak with them, supports them, and does what he

---

[2]  Mr. Lee has eight (8) children and PSR ¶20 should be corrected to reflect all of these children: Danesha Lee, Shirlee Johnson, Kisha Lee, Corey Lee, Kalin Lee, and Laura Lee. Danielle and Desiree Lewis are not biological children though Lorenzo Lee raised them, and they maintain close father -daughter like relationships.

can to help guide them through their problems or to just joke with them.  In a world where countless people are isolated and lonely, Lorenzo Lee is a lifeline.  He is remarkable and extraordinary.

Danielle Lewis writes,

Lorenzo "Lee" Lee .. has a huge [in] impact on my life, over the years he has become a father figure and friend to me.  He was there for me during some of the most challenging points of my life like the time my siblings and I experienced sudden homelessness due to our parent inadequacy and irresponsibility, he opened his home to us and helped get us on our feet.

Following a destructive car accident, Mr. Lee was the first person the sisters called, who immediately came to the hospital to stay with them.  "Lee has always been there for anyone that needed him even friends of friends from helping my friends with rides or a place to sleep and helping change tires of people stuck on the side of the road."

Danielle continues, "Lee is a caring and loyal man, he is generous and compassionate."  He was there for Danielle through the worst of her depression and anxiety when she wanted to give up, and Mr. Lee stepped up when he didn't have to when she had nothing, and her parent left her alone.  She says she wouldn't be here today but for Lorenzo Lee.  Danielle's letter is heartfelt and describes a man of unbound selfless care for her and others.

Desiree Lewis[3] writes, Exhibit A, page 2, that Lorenzo Lee has been there for her since she was 12 years old, that he "has been a very important person in my life" and "definitely a father figure for me, and my siblings."  She writes that Lorenzo has helped her to become an after-school teacher and is supporting her goal to be a full-time teacher in the future. He "has always been their

---

[3] The defense notes that the photo on page 3 of the government's sentencing memorandum does depict Mr. Lee however the photo is not related to the quotes from the intercepted calls to the left of it.  The photo is of Lorenzo speaking with Desiree Lewis who was not involved in this case.  Lorenzo is talking with her in person and not on a cell phone and she is not a participant in the phone calls depicted to the left of the photo.

4

to support me and lift me up."  Both she and her sister implore the Court to consider the positive impact that Lorenzo Lee has on them and others that he generously provides.

Mr. Lee's acts in helping others are the definition of true charity, done without seeking money, acknowledgment, or accolades.  He defaults to acts of kindness and empathy.  Of course, his deep devotion to the care of his family and others, led him astray when he couldn't find employment because of his criminal history, despite how long ago (26 years ago) the convictions occurred.  That he resorted to the conduct leading to this case as a means of supporting his family causes Mr. Lee deep remorse, regret, and embarrassment.

In fact, when counsel asked Mr. Lee to have his children and supporters present at the sentencing hearing so that the Court could see and feel the visual impact of his supportive community which would undoubtedly make a powerful statement important to the Court's sentencing determination, he declined to have them present despite counsel's repeated (and relentless) prodding in an effort to get him to change his mind. Mr. Lee said, "I don't want to put them through that.  They didn't do anything wrong.  I know they love me and though I know they would all take the day off of work and come to support me, I don't want them to have to experience that.  I don't want them to feel embarrassed like I do."  Though advised that not having his supporters present to demonstrate the structure of his community, and their unmitigated support and love, might impact the sentencing result in a negative way, Mr. Lee has persisted in declining to have them come to the courtroom to bear witness to his sentencing believing it would be too painful for them, seeking to shield them from experiencing any suffering from the experience. This is so despite his family and community knowing that he pled guilty and will be sentenced, and that there is a possibility that a sentence of imprisonment may be imposed which, of course, will result in his loved ones suffering but limiting the amount of suffering they may have to endure is Lorenzo's most important priority.

His daughter, Danesha Lee writes,

As his daughter, I have had the privilege of witnessing his kindness, compassion and dedication to his family and community throughout my life. … Growing up under his guidance has undoubtedly shaped me into the person I am today.  He has always encouraged us to be better than he was, demanding that we live a life of integrity, resilience and tenacity.  In our house, education was not an option, and we were told that we had one job and that was to do well in school.  He insisted that we put education first so we would not make the mistake he made.

Exhibit A, pages 3-4,

Despite Lorenzo only finishing high school and feeling that he isn't that smart, and despite his previous criminal record, Lorenzo did everything he could do to inspire his own children to live better and further themselves.

Danesha continues,

He has shown remorse for his actions and is actively taking steps to address the consequences of his behavior.  He is a productive member of society and holds down a full time job that he is very proud of.  He is also a tremendous help to my baby sister as she is a single mother of three[4].  With him working a graveyard shift, he is able to pick the kids up after school and keep them until my sister is off of work.  This has been a huge help for my sister.

Danesha's letter speaks to Mr. Lee's dedication to his family, his work, and his community and rightly points out that this "speaks volumes about his character and his potential for rehabilitation" and asks the Court to consider his age and how he has turned his life around.

As she describes, Lorenzo has since devoted himself to changing himself and improving his own life, which led Mr. Lee to securing meaningful employment at Amazon as a truck driver, working the graveyard shift from 6:30 p.m. to 5:00 a.m. where he was recently recognized for the efforts of his diligent work resulting in winning the 'Hostler of the Week', i.e. 'hustler' award. Exhibit B. The same dedication that Lorenzo Lee demonstrates to his family and community, that

---

[4] These grandchildren are 7-year-old twins and a 13-year-old.

same spirit Lorenzo has so aptly directed toward his family, he has now learned to apply to himself so that he can continue to devote himself to his family and community without making the kind of mistake in judgment that resulted in this offense.

Another daughter, Shirlee Johson, writes that she is "so grateful to have him as a father. Without him I would not be the person I am today"  Exhibit A, page 5.  She describes him as "such a lovable guy and always sees the positive in every one…. To help my father, I would sell every item I have, because my father would do the same to make sure his family is okay…. I became a registered nurse because I wanted to make sure when I got older that I could take care of my father the way he has done for me."  And though Lorenzo has been divorced from Shirlee's mother for a long time, Shirlee points out that Lorenzo "makes sure to take my (maternal) grandmother food and water weekly.  Just because their marriage did not work out, my father did not go back on his word to help my grandmother whenever she needed."

Shirlee's letter demonstrates Lorenzo's commitment to others no matter the circumstances. It also tells us how special he is and how deeply he is admired and loved.

His daughter Kisha Lee writes, Exhibit A, page 6,  that her father "taught me to be kind, resilient, confident, and loving. He is the prime example of the kind of father that I would want for my future children. He has loved me when I have exceeded his expectations and he has loved me when I have disappointed him. With tears in his eyes, he has encouraged me to be better, to love harder, and to embrace life!"

She continues that her father "takes pride in the wholeness of his family. He wants us to be complete and all encompassing and that we, as the unit he has raised us to be, stand in solidarity to plead for leniency" … "as I know he won't let you down, just as he has not let me. (down)"

His son, Corey Lee, writes, Exhibit A, page 7, that his father "has always been eager to lend a helping hand to those in need and has actively contributed to various community service

initiative" "who has raised professional and successful children and grandchildren who are also involved in the community".

Lorenzo's friend since elementary school, Ronnie Black echoes the description of others when describing Lorenzo as a loving, caring, good person who puts in the time with those he loves. He also writes that Lorenzo helps others, from the goodness in his heart, describing a family that was struggling with a funeral trying to raise money to bury a loved one. He recalls Lorenzo giving money to help even though he didn't know the family demonstrating the acts of charity that Lorenzo lives by. Exhibit A, page 8.

Shirley Lee, Lorenzo's ex-wife with whom he maintains a close friendship further describes Lorenzo's commitment to helping raise their grandchildren while at the same time helping her, "he's been a big help to me because I'm retired and the price of gas has been hard for me to do alone he really has changed his lifestyle for the better." Exhibit A, page 9. Shirley is not on her own able to pick up and care for their three grandchildren without Lorenzo's help each day and together they then are able to help their daughter and grandchildren. [5]

Mr. Lee is 70 years old with chronic medical conditions. He has high blood pressure, high cholesterol and is borderline diabetic. He has joint issues, needs dental work for cavities and needs tooth extractions causing him discomfort. These conditions are regularly treated by his clinicians, and he receives medical treatment and care near his home in Pittsburg. PSR ¶ 78.

Mr. Lee first appeared on this case on May 1, 2019. In the five years since, Lorenzo Lee has been in full compliance with all of the conditions of his pretrial release.

These five years that have passed since the offense bring before the Court a changed man who at 70 years of age has found meaningful full-time work that allows him to contribute to the

---

[5] Additional letters of support are expected to be received before the sentencing hearing.

DEFENDANT LORENZO LEE'S SENTENCING MEMORANDUM

community in ways that he hasn't been able to do previously.  The silver lining here is that Lorenzo Lee has done the work to demonstrate his post-offense rehabilitation and is a man living and giving to the community in the way that we hope to see at the conclusion of supervised release.  Lorenzo is there now and imprisoning him now after he has made these changes results in collateral consequences that sentencing is not meant to impose on the community and on the defendant.

## A DOWNWARD VARIANCE IS APPROPRIATE UNDER 18 U.S.C. § 3553.

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States,* 518 U.S. 81, 113 (1996). This is why 18 U.S.C. § 3553(a) requires the Court consider "the nature and circumstances of the offense and the history and characteristics of the defendant," along with what sentence will "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1) and (2)(D).

In determining the appropriate sentence, the Court is guided by the principle that it "shall impose a sentence sufficient but not greater than necessary" to meet the goals of sentencing. 18 U.S.C. § 3553(a); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).  To do this, the Court must consider the totality of the defendant's life, not just his failures but his successes too.  The Court must ask – who is this person?  How did he come to be here?

Lorenzo Lee became involved in this offense when he found himself desperate and unable to financially support his children and grandchildren, a mistake that he deeply regrets. The letters of support fully detail and describe who Lorenzo Lee really is and how deep the bond is between everyone in this blended family and community unit. Acknowledging this mistake by pleading

1    guilty rather than taking the case to trial and making the commitment to change his life and

2    actually doing just that answers the questions of who Lorenzo Lee is at 70 years of age and how he

3    came to be here.

4        **Lorenzo Lee has an exceptionally low risk of recidivism.**

5        At 70 years old, Lorenzo Lee, working full time with close ties to his immediate and

6    extended family, his friends, and his community, has zero criminal history points. For all male

7    offenders in CHC I, the recidivism rate is 15.2%.  For those over age 50 at the time of sentencing,

8    however, the rate in CHC I is only 6.2%.

9        The Commission has recognized the advisability of revising the guidelines to take age into

10   account.  *See Measuring Recidivism* at 16 (noting that "[o]ffender age is a pertinent characteristic"

11   that would "improve [the] predictive power of the guidelines "if incorporated into the criminal

12   history computation").   The Commission has not implemented any such revisions to the criminal

13   history guidelines but has stated as a policy statement that age "may be relevant" individually or in

14   combination with other offender characteristics if they are present to an unusual degree and

15

16   distinguish the case from the typical cases covered by the guidelines.  USSG § 5H1.1, p.s.

17

18       In imposing the least sentence sufficient to account for the need to protect the public from

19   further crimes of Lorenzo Lee, this Court should consider the statistically low risk of recidivism

20   presented by Lorenzo's characteristics.  *See, e.g.*, *United States v. Hamilton*, 323 Fed. Appx. 27,

21   31 (2d Cir. 2009) ("the district court abused its discretion in not taking into account policy

22   considerations with regard to age recidivism not included in the Guidelines"); *United States v.*

23   *Holt*, 486 F.3d 997, 1004 (7th Cir. 2007) (affirming below-guideline sentence based on

24   defendant's age, which made it unlikely that he would again be involved in a violent crime);

25   *United States v. Urbina*, slip op., 2009 WL 565485, *3 (E.D. Wis. Mar. 5, 2009) (considering low

26

27   risk of recidivism indicated by defendant's lack of criminal record, positive work history, and

28

DEFENDANT LORENZO LEE'S SENTENCING MEMORANDUM

strong family ties); *United States v. Cabrera*, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (granting variance because defendants "with zero criminal history points are less likely to recidivate than all other offenders"); *Simon v. United States*, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (basing variance in part on defendant's age of 50 upon release because recidivism drops substantially with age); *United States v. Nellum*, 2005 WL 300073 at *3 (N.D. Ind. Feb. 3, 2005) (granting variance to 57-year-old defendant because recidivism drops with age).

**The Need for Medical Care**

The sentence imposed must ensure that "needed . . . medical care" is provided "in the most effective manner."   18 U.S.C. § 3553(a)(2)(D).    The Commission now recognizes that "[p]hysical condition . . . may be relevant in determining whether a departure is warranted," and has always recognized that "in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." USSG § 5H1.4, p.s. .

Lorenzo Lee is not seriously infirm something we seek to avoid; he is, however, suffering from chronic medical conditions and in combination with his age, could accelerate without proper and regular medical attention and care. It is doubtful that these conditions will be treated effectively if incarcerated; adequate treatment is not enough, it must be "effective".  *See*  18 U.S.C.  §  3553(a)(2)(D).

Audits  by  the  Office  of  the  Inspector  General  found  systemic deficiencies in the Bureau of Prisons' delivery of health services.  One recent audit found that at a number of institutions, the Bureau of Prisons "did not provide required medical services to inmates," including inadequate treatment for chronic conditions, failure to properly monitor side effects of medication, allowing unqualified providers to render medical services, and failure to meet performance target levels on treatment of serious conditions, including diabetes.  *See* U.S. Dep't of

Justice, Office of the Inspector General Audit Division, *The Federal Bureau of Prison's Efforts to Manage Inmate Health Care* ii-xix,

32-34 (2008), *available at* www.justice.gov/oig/reports/BOP/a0808/final.pdf.

In light of the Inspector General's audit, there is no reason to believe that the Bureau of Prisons will provide "the most effective" treatment for an aged person with persistent chronic health conditions that can easily spiral out of control.  Moreover, substitutions to imprisonment may be as efficient as, and less costly than, imprisonment.

### Post-Offense Rehabilitation

Post-offense rehabilitation is another factor that is now recognized as an appropriate mitigating circumstance. For example, in *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008), the court imposed 144 months for a cocaine base distribution conspiracy rather than apply the career offender range, stressing, among other things, defendant's particularly striking impression as a changed man who renounced his former ways and renewed commitment to religion and family.

It has been five years since the offense in this case without even a minor hiccup by Lorenzo.  As indicated in the PSR, and the support letters,  Mr. Lee has demonstrated not only a desire to change his life, but he has, in fact, changed it.  A dedicated family man, who regularly provides charitable acts to others in need of time, food, money, attention or love, Lorenzo now also contributes to society by working full time, something that he is so proud to do.  Allowing Lorenzo to continue on this path for the next three years on supervised release with the first year served as a split sentence between the halfway house and on home confinement allows the growth to continue to flourish.

### No empirical evidence that harsher punishment provides deterrence.

Section 3553(a)(2)(B) requires the Court to consider "the need for the sentence imposed …to afford adequate deterrence to criminal conduct."

After reviewing empirical evidence regarding the continuing increase in the number of drug and child pornography offenders despite the war on each and stiff federal sentences, one judge concluded that "there is not a sliver of evidence in this sentencing record remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet . . . This does not mean that [the defendant] should not receive a lengthy sentence for his criminal conduct, but it does mean that the sentence should not be longer simply to satisfy an objective that, while laudable, is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or source that I am aware of." *United States v. Beirermann,* 599 F. Supp. 2d 1087, 1103-4 (N.D. Iowa 2009).

Indeed, while many believe that the higher the sentence, the greater the effect in deterring others, the empirical research shows no relationship between sentence length and deterrence. The general research finding is that "deterrence works," in the sense that there is less crime with a criminal justice system than there would be without one. But the question for the judge is "marginal deterrence," *i.e.,* whether any particular quantum of punishment results in increased deterrence and thus decreased crime. Here the findings are uniformly negative: there is no evidence that increases in sentence length reduces crime through deterrence. Current empirical research on general deterrence shows that while *certainty* of punishment has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing,* 34 Crime and Justice: A Review of Research 28-29 (2006).

In one of the best studies of specific deterrence, which involved federal white-collar offenders (presumably the most rational of potential offenders) in the pre-guideline era, no difference in deterrence was found even between probation and imprisonment. *See* David

Weisburd et. al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes,* 33 Criminology 587 (1995); *see also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 448-498 (2007), ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders."). According to "the best available evidence . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen *et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011).

With regard to general deterrence "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects." *See* Andrew von Hirsch, et al, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999). "There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms." Gary Kleck, et al, *The Missing Link in General Deterrence Theory,* 43 Criminology 623 (2005).

Further problematic with justifying punishment as a means to deter others, besides its ineffectiveness, is that it is immoral to punish one person merely to promote deterrence of others. "Juridical punishment can never be administered merely as a means for promoting another good either with regard to the criminal himself or to civil society but must in all cases be imposed only because the individual on whom it is inflicted has committed a crime. For one man ought never be dealt with merely as a means subservient to the purpose of another." Immanuel Kant, The Science of Right 195 (W. Hastie trans., 1790).

Balancing the ineffectiveness of and ethical problems with general deterrence against the financial costs to society of imprisoning an individual should lead this Court to conclude that

DEFENDANT LORENZO LEE'S SENTENCING MEMORANDUM

general deterrence is not a good reason for imposing a lengthy prison term in this case on Lorenzo Lee. *See United States v. Cole*, slip op., 2008 WL 5204441 *6-7 (N.D. Ohio Dec. 11, 2008).

**The Guidelines calculation is substantially increased by methamphetamine.**

All parties agree that Mr. Lee was involved in the sale of cocaine.  And that in the process of obtaining that product to distribute, he was mistakenly provided with heroin by his supplier, that was seized as a part of the investigation.  He also agreed to allow his supplier to temporarily store overnight methamphetamine in his garbage bins that were picked up by the supplier's courier and subsequently seized by law enforcement. Lorenzo Lee never sold methamphetamine, yet it alone drives the sentencing guideline offense up to a level 38.  For reference, calculating the guidelines for the cocaine, as in footnote no. 1, results in an adjusted offense guideline of 17, with a guidelines range of 24 to 30 months.

The resulting guideline sentence here with the methamphetamine, of 108 to 135 months, is a guideline sentence that conflicts with § 3553(a)'s directive to impose a sentence "sufficient but not greater than necessary" given that Mr. Lee did not ever sell that drug. Varying substantially below the guidelines is a remedy that the Court can justify imposing here.  *See, United States v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008)(upheld sentence of one year and one day as reasonable for defendant convicted of possession with intent to distribute 100 grams of heroin with guideline range of 46-57 months where district court determined guideline range was greater than necessary to meet goals of § 3553(a)(2) and focused on his personal history and characteristics, including work record, community support, and caregiver and supporter of his young son and elderly parents, and low recidivism risk);  *U.S. v. Chase*, 560 F.3d 828 (8th Cir. 2009) (the Supreme Court's decisions compelled iteration that "the standards governing departures do not bind a district court when employing its discretion with respect to variances," and the case is remanded because Chase's advanced age, military service, health issues, and employment

DEFENDANT LORENZO LEE'S SENTENCING MEMORANDUM

history could all warrant a downward variance under §3553(a)); *U.S. v. Howe*, 543 F.3d 128 (3d Cir. 2008) (affirming 2 years of probation with 3 months of home confinement for wire fraud despite a guideline range of 18-24 months, as district court could rely on its finding of Howe's heartfelt remorse at sentencing despite his denial of fraudulent intent at trial and defense based on blaming another, as well as the defendant's devotion to family and prior military service)

**CONCLUSION**

A substantial variance from the guidelines is the only route to ensure that the Court imposes a sentence that is sufficient but not greater than necessary to achieve the sentencing purposes under §3553.  Mr. Lee's age, his charitable acts, his deep remorse, his post offense rehabilitation including his positive performance on supervision for five (5) years, his employment, his need to help support and care for his daughter and grandchildren, among others, and because the guideline sentence conflicts with § 3553(a)'s directive to impose a sentence "sufficient but not greater than necessary" all support Lorenzo Lee's request for a sentence of time served, followed by three (3) years of supervised release with the first six (6) months in a halfway house, followed by six (6) months of home confinement.

DATED: April 9, 2024                              Respectfully submitted,

                                                      */s/ Gail Shifman*

                                                      _____
                                                      GAIL SHIFMAN
                                                      Counsel for Defendant Lorenzo Lee

EXHIBIT A

Honorable Richard Seeborg
United States District Judge

RE: United States v. Lorenzo Lee, Case No. CR 19-0226 RS


My name is Danielle Lewis and i have no blood relation to Lorenzo "Lee" Lee but he has a huge in impact on my life, over the years he has become a father figure and friend to me. He was there for me during some of the most challenging points of my life like the time my siblings and I experienced sudden homelessness due to our parent inadequacy and irresponsibility, he opened his home to us and helped get us on our feet. During a car accident that my sister and i were in when a car ran the light smashing into us and destroying our car. He was the first call and the person that drove us to and stay with us in the hospital. Lee has always been there for anyone that needed him even friends of friends from helping my friends with rides or a place to sleep and helping change tires of people stuck on the side of the road. There are many stories like these.

Lee is a caring and loyal man, he is generous and compassionate. Lee was there through the worst of my depression and anxiety when i wanted to give up, when is thought the world was a cold and harsh place that just wanted me dead he was there with his silly goofy dad joke and wise elderly wisdom, during my time where i had nothing and my parent left alone he step in when he really didnt have to. Lee was there during my problems with self image and i felt the ugliest and fattest ive ever felt, when i was drowning in lifes stresses and felt my families lives was on my recently turned 18yrs back he ground me he found me in the beginning of many panic or anxiety attack and talked me down from many metaphorical edeges and i can truthly say without him i wouldnt be here today.

I understand the he pled guilty for possessing and distributing drugs and i know the court will impose a sentence I do hope that the court will give a least restrictive sentence possible. Lee has always helped family and friends from small thing like helping my friends with small car repair to bigger things as sheltering homeless kids of no blood relation to him when we had where to go. Lee is a permante fixture in my and my families lives, he is a pillar of support in my life and hope you will consider everything he has done to comply and change he has a job he enjoys and even won award for performance and has learned bits of technology he never used to be more productive, he learned from me he wanted to do great at the new job he would call me after work for me to teach his how to use a computer. I wish the letter of just the few thing Lee has done has reached you well and show in some small way of how important Lee is to me and those around him. Thank you.
  Danielle Lewis
Lewisdanielle19@gmail.com

**From:** Gail Shifman
**To:** Gail Shifman
**Subject:** RE: Support letter for Lorenzo Lee
**Date:** April 8, 2024 5:40:54 PM

My name is Desiree Lewis.  I am 27 years old and I have known Lorenzo Lee since I was 12, so for over 15 years.   Lorenzo Lee has been a very important person in my life. He is definitely a father figure for me, and my siblings.  I am an after school teacher, and I have a lot of pride for what I do, and he has support me with my goal to be a teacher in the future. I want to help as many children as I can, and he has always been their to support me and lift me up.  He has supported me with a lot of care and consideration with my future endeavors. Losing him in my life  would leave me without substructure to better myself for the future. I will need his support now and forever. Please consider his assist he has for me and my family, as a close family friend when coming to a decision.

 Email: lewismdesiree@gmail.com

April 7, 2024


Honorable Richard Seeborg
United States District Judge

RE:  United States v. Lorenzo Lee, Case No. CR 19-0226 RS


I am writing to you today with a heavy heart, and also with a deep sense of hope and faith in the fairness of our judicial system.  My name is Danesha Lee, and I am here to speak to you about my father, Lorenzo Lee who has my unwavering support.  As his daughter, I have had the privilege of witnessing his kindness, compassion and dedication to his family and community throughout my life.  My father has always been the rock in our family.  Growing up under his guidance has undoubtedly shaped me into the person I am today.  He has always encouraged us to be better than he was, demanding that we live a life of integrity, resilience and tenacity.  In our house, education was not an option, and we were told that we had one job and that was to do well in school.  He insisted that we put education first so we would not make the mistakes he made.  My father is so unbelievably proud of his kids as we are college educated with thriving careers.

Despite the challenges he is currently facing, I have full confidence in my father's character and his commitment to rectifying the mistakes he has made. He has shown remorse for his actions and is actively taking steps to address the consequences of his behavior.  He is a productive member of society and holds down a full time job that he is very proud of.  He is also a tremendous help to my baby sister as she is a single mother of three.  With him working a graveyard shift, he is able to pick the kids up after school and keep them until my sister is off work.  This has been a huge help for my sister.  I understand that my father has pled guilty and accepted responsibility for the charges against him. While I acknowledge the seriousness of his actions, I implore the court to see beyond the charges and recognize the entirety of who he is.  Also considering his age and how he has turned his life around. He is much more than his mistakes.

Furthermore, I believe that my father's dedication to his family, his work, and his community speaks volumes about his character and his potential for rehabilitation. I respectfully ask for your consideration of these factors as you weigh the circumstances of my father's case. I believe that a fair and compassionate approach to justice will not only serve the interests of the law but also uphold the principles of mercy and

redemption that are fundamental to our legal system. Thank you for taking the time to read this letter and for considering my perspective as you preside over my father's case. I trust in the wisdom of the court to make a fair and just decision.


Sincerely,

Danesha Lee

To Whom It May Concern:

I am Shirlee Johnson, the daughter of Lorenzo Lee. I am writing this letter on his behalf. My father is a honest and loving man. I am so grateful to have him as a father. Without him I would not be the person I am today.

My father is very dependable and always keeps his word. If my father says he will be there at 5 o'clock, he will arrive at 4:58. My father is such a lovable guy and always sees the positive in every one.

To help my father, I would sell every item I have, because my father would do the same to make sure his family is okay. I recently had surgery and was in great pain, my father drove out of his way to bring me soup and a heating pad, to make sure his daughter was not in pain.  Even though I am married, I list my father as my emergency contact because I know that he is never too busy to answer a call for his children.

I became a registered nurse because I wanted to make sure when I got older that I could take care of my father the way he has done for me. I am 35 years old and I am still his baby girl. Not a lot of people have fathers in their lives and I am beyond blessed to have mines.

My mother have father have been divorced for quite some time, but he makes sure to take my grandmother (my mother's mother) food and water weekly. Just because their marriage did not work out, my father did not go back on his word to help my grandmother whenever she needed.

You can take my house if my father does not show up to court. I say that because I know my father will show up to court. Please let my father come home. He is not a burden on society; he actually makes the world a better place with his loving heart.


Shirlee Johnson
Shirlee23@hotmail.com
(925) 818- 2095


page 5

**From:** Kisha"s Personal
**To:** Gail Shifman
**Subject:** Reference Letter for Lorenzo Lee
**Date:** April 8, 2024 7:10:37 PM

Dear Honorable Richard Seeborg
United States District Judge

Re: United States vs Lorenzo Lee,
Case number cr-19-0226 rs

My name is Kisha Lee and I am one of Lorenzo Lee's eight children. My father has taught me to be kind, resilient, confident, and loving. He is the prime example of the kind of father that I would want for my future children. He has loved me when I have exceeded his expectations and he has loved me when I have disappointed him. With tears in his eyes, he has encouraged me to be better, to love harder, and to embrace life! I still need those lessons from him. I still need those encouraging words. At 44 years old, I'm still daddy's little girl. I always will be. I need him. He knows that. My father takes pride in the wholeness of his family. He wants us to be complete and all encompassing. We are a blended family and he has taught me to want it no other way. I love him for that. He makes sure we convene every holiday and every birthday to celebrate life and to cherish every moment we have together. I don't want the last cherish-able moments of my father, to be of the past. We, as the unit he has raised us to be, stand in solidarity to plead for leniency. I want to share one more meal, celebrate one more birthday or cherish one more moment with the man I love the most...my father. I am asking for leniency as I know he won't let you down, just as he has not let me.


Respectfully,


His loving daughter,
Kisha Lee

**From:** Corey Lee
**To:** Gail Shifman
**Subject:** United States v Lorenzo Lee Case No. CR 19-0226 RS
**Date:** April 7, 2024 8:36:51 PM

Honorable Richard Seeborg, United States District Judge,

I hope this letter finds you in good health and high spirits. I am writing to humbly request your leniency in the case against my father, Lorenzo Lee, who is currently standing trial.

I am fully aware of the severity of the charges against my father, and I understand the importance of upholding the law and ensuring justice is served. However, I would like to bring to your attention some additional information that I believe warrants consideration for a lighter sentence.

Lorenzo Lee  has consistently demonstrated good character throughout his life. As a son and confidant, I have witnessed his unwavering commitment to integrity, honesty, and compassion. He has always been eager to lend a helping hand to those in need and has actively contributed to various community service initiatives.

Furthermore, My father has consistently maintained a favorable reputation among his peers, colleagues, and acquaintances. His strong moral compass and commitment to upholding the law are evident in his everyday actions and interactions. He's a family man who has raised professional and successful children and grandchildren who are also involved in the community.

I firmly believe that my father is a person of good character who deserves a fair and just trial. I kindly ask you to take into account this additional information when considering the case.

Thank you for your attention to this matter. Should you require any further information or clarification, please do not hesitate to contact me at your earliest convenience.

Sincerely,

Corey Lee

page 7

**From:** Gail Shifman
**To:** Gail Shifman
**Subject:** Lorenzo Lee
**Date:** April 8, 2024 1:34:10 PM

My name is Ronnie Black. I've been knowing Lorenzo since elementary school he became my best friend. You couldn't find a better person than him. He always care for other peoples. Lorenzo, like all of us made mistakes. he is currently working with Amazon. Good employee and good role model he received award.

I forgot to mention his love for his family. He really loves his family spends a lot of time with his grandkids. We always share stories about our families. One of our saying, Money can't buy this. with tears in my eye, I truly love this man and we all deserve a second chance.

I remember a family was struggling with a funeral, trying to raise money to bury a loved one. I don't remember the amount of money Lorenzo gave to help, but he didn't even know the family.

I always see him give him give homeless people money, or buying them a meal.

You don't find too many people in the world like him.

Thank you.

303 W. Merrill Ave., Apt. 614, Rialto, CA 92376.

Ph: 626/533-5552

page 8

**From:**      Shirley Lee
**To:**         Gail Shifman
**Subject:**  United State vs Lorenzo Lee
**Date:**     April 8, 2024 9:29:50 AM

Honorable Richard Seeborg United State District Judge
My name is Shirley Lee I'm the ex wife of Lorenzo Lee I'm sorry my letter is late but I've been ill our daughter lost her kid father and Lorenzo and I are helping her with the kids getting them from school because she has to work he's been a big help to me because I'm retired and the price of gas has been hard for me to do alone he really has changed his lifestyle for the better and I hope you take this into consideration thank you Shirley A Lee

Sent from Yahoo Mail for iPhone

EXHIBIT B

